UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **NORTH AMERICAN LAND DEVELOPMENT CORP. ET AL.** | \* | **CIVIL ACTION NO. 17-1483** |
| **vs.** | \* | **JUDGE TERRY A. DOUGHTY** |
| **JELD-WEN, INC. ET AL.** | \* | **MAG. JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to enforce settlement agreement, or in the alternative to reopen this matter, filed by plaintiffs North American Land Development Corporation and N. Edward Hakim ("Plaintiffs"). [doc. # 41]. The motion is opposed. For reasons detailed below, it is recommended that the motion be **GRANTED IN PART** and **DENIED IN PART**.

### Background

On August 23, 2017, Plaintiffs filed a Petition in Louisiana's 4th Judicial District Court, Ouachita Parish, against defendants Jeld-Wen, Inc. ("Jeld-Wen") and Millwork Sales of Georgia d/b/a MSI Jackson (incorrectly named as Millwork Services Inc.) ("Millwork"). Plaintiffs alleged damages due to their purchase of defective windows manufactured by Jeld-Wen. [doc. # 1-1]. Defendants removed the matter to federal court on the basis of diversity jurisdiction, 28 U.S.C. § 1332, on November 10, 2017. [doc. # 1; *see* doc. # 15].

The parties reached a settlement, which was memorialized by a Compromise Agreement, executed on September 12–13, 2018. ("Agreement," [doc. # 41-2]). The Agreement includes the following provisions:

1. JELD-WEN will sell and have delivered to Plaintiffs the 196 Replacement Units identified in Bob Mitchell's report dated February 21, 2018 . . . . Plaintiffs are responsible for preparing and submitting the Order to JELD-WEN.
2. . . .
3. JELD-WEN will fulfill the order for aforesaid 196 Replacement Units and furnish the Warranty for same within nine (9) weeks of placing of the Order by Jimmy Plauche of Louisiana Building Specialties through JELD-WEN Customer Care c/o Kelly [sic] Stout . . . . The Order must include templating for the custom transom glass openings in Plaintiffs' home. Plaintiffs are responsible for any fees or costs charged by Mr. Plauche in preparing the Order.

The parties did not place their settlement on the record but provided the Court with a Notice of Settlement, [doc. # 33]. On September 28, 2018, the Court entered an Order of Dismissal, dismissing the action. The Order of Dismissal provided that the parties could move "to reopen the action if settlement is not consummated" on "good cause shown within sixty (60) days of the signing of this Order." [doc. # 34]. The parties moved three times to extend the time for final dismissal, which the Court granted. [docs. 35–40]. On March 26, 2019, the Court ordered that the "parties have 60 days from the signing date of this Order to file a Stipulated Dismissal." [doc. # 40].

On April 25, 2019, Plaintiffs filed the instant motion to enforce the Agreement. [doc. # 41]. Plaintiffs make the following claims: (1) Jeld-Wen's distributor, Plauche, had a third-party, Clyde Potier, make the measurements needed for the Order and submit a list of materials to be replaced to Stout. Stout initially responded that "she would send an 'Order' back for 'proofing'" but "later reneged on this commitment" at Jeld-Wen's instruction. [doc. 41-1 at 1–2]. Jeld-Wen also insists on the Order being sent in a special form, despite no such requirement in the Agreement. (*Id.* at 2); (2) Plaintiffs have contacted Plauche to request he place the Order in the form Jeld-Wen requests, but Plauche refuses to do so. Plauche allegedly informed Plaintiffs that he was first instructed by Jeld-Wen not to place the Order and was then advised that the Order

2

was being implemented by Jeld-Wen. (*Id.* at 2–3). Plaintiffs request that the Court order Jeld-Wen to place the needed items into production and furnish the agreed-on replacement items to Plaintiffs as per the Agreement. In the alternative, Plaintiffs request the Court cancel the Notice of Settlement and return this matter to the trial docket. (*Id.* at 4–5).

On May 16, 2019, Jeld-Wen filed an opposition to Plaintiffs' motion.[1] [doc. # 43]. Jeld-Wen responds that Plaintiffs have not fulfilled their end of the Agreement because Plauche has not submitted any Order. According to Jeld-Wen, "[i]f plaintiffs have Jimmy Plauche submit an Order with templating for the custom transom glass openings in Plaintiffs' home, JELD-WEN will fulfill the Order within nine (9) weeks of receipt of the Order." (*Id.* at 3). Jeld-Wen claims that the document submitted by Potier to Stout is a "list" of materials and does not constitute an Order. Moreover, despite Stout's initial response to the list, she emailed Plaintiffs later that day explaining they needed to provide her with "a Quick Quote order for exactly what it is that needs to be replaced. . . . It would not be JELD-WEN's responsibility to convert [Potier's] information into the actual order." (*Id.* at 4); [doc. # 43-1]. Jeld-Wen also denies knowing why Plauche is not submitting the Order and claims the "reality is that Mr. Plauche . . . does not want to be responsible for placing the Order." [doc. # 43 at 6]. Further, Jeld-Wen avers that it intends to file its own motion to enforce to Plaintiffs' compliance with the Agreement. (*Id.* at 1).

Plaintiffs filed a reply on May 17, 2019. [doc. # 44].

## Law and Analysis

### I. Jurisdiction

Federal courts are of limited jurisdiction and "possess only that power authorized by Constitution and statute, . . . which is not to be expanded by judicial decree." *Kokkonen v.*

---

[1] Millwork consents to the filing of the motion, while Jeld-Wen opposes. [doc. # 41 at 4].

*Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). No federal statute "gives federal courts jurisdiction to hear a claim for breach of an agreement merely by virtue of the fact that part of the consideration for [the agreement] was dismissal of an earlier federal suit." *Hosp. House, Inc. v. Gilbert*, 298 F.3d 424, 431 (5th Cir. 2002) (citations omitted). "Enforcement of [a] settlement agreement . . . is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." *Kokkonen*, 511 U.S. at 378. A Court may exercise its ancillary jurisdiction to enforce a settlement agreement if it explicitly retains jurisdiction over the agreement or incorporates the agreement in its dismissal order. *Id.* at 381–82. Otherwise, "enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction." *Id.* at 382.

In this case, the undersigned finds an independent basis for subject matter jurisdiction: diversity jurisdiction, 28 U.S.C. § 1332. This case was removed to federal court on the basis of diversity jurisdiction, [docs. # 1, 15]. The signatories to the Agreement are the same parties as in the lawsuit and are completely diverse. Further, the amount in controversy exceeds $75,000. In suits for specific performance, such as this one, courts look to the value of the property involved to determine the jurisdictional amounts. *Comprehensive Addiction Programs v. Mendoza*, 50 F. Supp. 2d 581, 583 (E.D. La. 1999); *see Alfonso v. Hillsborough Cty. Aviation Auth.*, 308 F.2d 724, 727 (5th Cir. 1962) ("The value to the plaintiff of the right to be enforced or protected determines the amount in controversy"). Here, the Agreement provides for Jeld-Wen to fulfill an order for "196 Replacement Units," which are valued at $91,885.81 according to invoices previously filed. [*see* doc. # 1-2]. Thus, this Court has jurisdiction to enforce the Agreement.

**II.     Choice of Law**

"[F]ederal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). The Court applies the choice of law rules of the forum state—Louisiana—to determine which state's law governs. *PHI, Inc. v. Rolls-Royce Corp.*, No. CIV.A. 08-1406, 2010 WL 883794, at *5 (W.D. La. Mar. 9, 2010) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Under Louisiana's choice of law rules, contracting parties may generally choose which state's law will govern disputes arising out of the contract. *Id.* (citing La. Civ. Code art. 3540). Here, the Agreement does not specify which state's law governs. However, Louisiana's residual choice of law provision supports the application of Louisiana law. Louisiana Civil Code Article 3515 provides:

> Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

The dispute in this case centers around a contract to be fulfilled in Louisiana. Plaintiffs are citizens of Louisiana, and Defendants are authorized to do business in Louisiana. There is no indication that any other state's policies would be impaired if its laws did not apply. Therefore, the Court will apply Louisiana law. To determine Louisiana law, the Court examines Louisiana's codes and statutes and looks to the final decisions of the Louisiana Supreme Court. *See Moore v. State Farm Fire & Cas. Co.*, 556 F.3d 264, 269–70 (5th Cir. 2009).

"Under Louisiana law, the interpretation of an unambiguous contract is an issue of law for the court." *Jones v. Travelers Indem. Co.*, No. 6:18-CV-946, 2018 WL 6684584, at *2 (W.D. La. Dec. 19, 2018). "A compromise is a contract whereby the parties, through concessions made

5

by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship." La. Civ. Code art. 3071. To be enforceable, the compromise "shall be made in writing or recited in open court." La. Civ. Code art. 3072.[2]

Like any contract, a compromise is "interpreted in accordance with the intent of the parties" and "governed by the same general rules of construction that are applicable to contracts." *Jones*, 2018 WL 6684584, at *2 (quoting *Trahan v. Coca Cola Bottling Co. United, Inc.*, 2004-0100 (La. 3/2/05), 894 So. 2d 1096, 1106)). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. "[T]he meaning and intent of the parties to a written compromise is generally determined from the four corners of the instrument." *Advance Prod. & Sys., Inc. v. CCI Piping Sys., L.L.C.*, No. 2:14-CV-2456, 2018 WL 1542100, at *8 (W.D. La. Mar. 29, 2018). Although "extrinsic evidence may be considered when disputes arise as to the scope of the agreement," this exception is limited "to cases in which substantiating evidence is presented establishing . . . that the releasor did not fully understand the nature of the rights being released or that the releasor did not intend to release certain aspects of his or her claim." *Id.* (citing *Brown v. Drillers, Inc.*, 630 So. 2d 741, 749 (La. 1994)).

### III. Enforceability of Agreement

On review, the undersigned finds the Agreement to be clear and explicit: once Jimmy Plauche places the Order for 196 replacement units to Jeld-Wen Customer Care c/o Kelley Stout, Jeld-Wen will fulfill the Order within nine weeks. Plaintiffs do not dispute the scope of the agreement. Rather, they claim that they have tried to comply with the terms of the Agreement to

---

[2] The Agreement provided to the Court contains only Plaintiffs' signatures. [doc. # 41-2]. Defendants do not contend they did not sign the Agreement. Accordingly, the undersigned finds the requirements of La. Civ. Code art. 3072 to be satisfied.

no avail. In response, Jeld-Wen explains it has not refused to accept Plaintiffs' Order, but neither Plaintiff nor Plauche have actually placed an Order to be fulfilled.

However, the Court is unable to enforce the Agreement. Jeld-Wen's performance is contingent on Plauche placing the Order. Plauche is not a party to the Agreement or the underlying litigation; there is no indication that Plaintiffs or Jeld-Wen have any authority over him; and the Agreement contains no provision for securing his consent to submit the Order. "Under the general principles of contract law, it is axiomatic that courts cannot bind a non-party to a contract, because that party never agreed to the terms set forth therein." *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 652 (5th Cir. 2004); *see, e.g.*, *Castrellon v. Ocwen Loan Servicing, L.L.C.*, 721 F. App'x 346, 349 (5th Cir. 2018) (noting that the district court could not enforce a settlement agreement that required a non-party to agree to a loan modification). Because the Court cannot bind Plauche to the Agreement, it cannot enforce the Agreement.

Further, the Agreement creates a conditional obligation based on a suspensive condition. *See* La. Civ. Code art. 1767. "When an obligation is dependent upon a condition, the right to enforce the obligation does not arise until fulfillment of the suspensive condition, and the obligation may not be enforced until the condition is met." *Foster v. United of Omaha Life Ins. Co.*, No. CIV.A. 08-1170, 2010 WL 3834047, at *6 (W.D. La. Sept. 24, 2010) (citations omitted). When it becomes clear that the suspensive condition will not occur, the obligation is broken, and the contract is null. *Id.* Here, Jeld-Wen is not obligated to fulfill the Order until Plauche places it through Jeld-Wen Customer Care. According to Plaintiffs, Plauche is refusing to place the Order, and there is no way to force Plauche to place the Order. (*See* Declaration of Joe D. Guerriero ¶¶ 5–8, [doc. # 41-5]). Jeld-Wen does not dispute Plauche's refusal or suggest it can compel Plauche to submit the Order. Rather, Jeld-Wen contends that Plauche simply does

7

not want the responsibility of placing the Order. [doc. # 43 at 6]. Accordingly, it is clear that the suspensive condition will not occur. Therefore, Jeld-Wen's obligation to fulfill the Order is broken, and the Agreement is null.

## IV. Reopen Case

In the alternative, Plaintiffs request the Court cancel the Notice of Settlement and return this matter to the trial docket. [doc. # 41-1 at 4–5]. The Court explicitly permitted this case to be reopened "upon good cause shown" if settlement is not consummated. [doc. # 34]. Because Plaintiffs' are unable to submit the Order themselves and have no authority to order Plauche to submit the Order, Plaintiffs have demonstrated good cause for why this case should be reopened.

## Conclusion

Accordingly,

**IT IS RECOMMENDED** that Plaintiffs' motion to enforce settlement agreement [doc. # 41] be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Plaintiffs' motion to cancel the Notice of Settlement and place this matter back on the trial docket [doc. # 41] be **GRANTED**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. The District Judge will consider timely objections before making a final ruling.

**Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, shall bar an aggrieved party, except on grounds of plain error,**

**from attacking on appeal the unobjected-to factual findings and legal conclusions accepted by the District Judge.**

In Chambers, at Monroe, Louisiana, this 4th day of June 2019.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE